**Bruce WATSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SC 95665**

Supreme Court of Missouri,
**en banc.**

Opinion issued May 2, 2017

Rehearing Denied June 27, 2017

---

424

Matthew W. Huckeby, Public Defender's Office, St. Louis, for Appellant.

Shaun J. Mackelprang, Attorney General's Office, Jefferson City, for Respondent.

George W. Draper III, Judge

Bruce Watson (hereinafter, "Watson") was convicted by a jury of first-degree robbery and sentenced to fifteen years' imprisonment. At Watson's sentencing hearing, the circuit court misinformed him about the time deadlines to file his Rule 29.15 post-conviction motion. Watson's conviction was affirmed on direct appeal, *State v. Watson*, 397 S.W.3d 539 (Mo. App. E.D. 2013), and the court of appeals issued its mandate. Watson filed a Rule 29.15 motion for post-conviction relief approximately sixteen months later despite Rule 29.15(b)'s requirement that it be filed within ninety days of the mandate's issuance. The motion court overruled Watson's motion without an evidentiary hearing. Watson appeals.

This Court holds that Watson's Rule 29.15 post-conviction relief motion was

filed untimely. However, Watson's untimeliness is excused because the circuit court misinformed him about the appropriate deadline to file his motion during his sentencing colloquy. The Court further holds the motion court clearly erred in overruling Watson's Rule 29.15 motion because Watson demonstrated he is entitled to an evidentiary hearing concerning trial counsel's strategy for failing to request a lesser-included offense instruction. The case is reversed, and the cause is remanded for an evidentiary hearing.

### Factual and Procedural History

On July 11, 2009, Watson entered a Check N' Go store where Yulena Shull (hereinafter, "Shull") was working. When Shull asked Watson if she could help him, Watson reached around another customer, tossed a blue plastic grocery bag onto the counter and told Shull to fill up the bag. Watson walked around the counter, reached into his pocket, and quickly flashed what Shull believed to be a gun at her. Shull emptied the contents of her cash drawer into the grocery bag. Watson left the store, and Shull contacted the police. Watson was arrested and charged with one count of first-degree robbery and armed criminal action. The jury convicted Watson of first-degree robbery but acquitted him of armed criminal action.

At sentencing, when the circuit court asked Watson if there was any legal reason why he should not be sentenced, Watson answered, "I wasn't properly represented." After the circuit court sentenced Watson to serve fifteen years' imprisonment, the circuit court informed Watson of his post-conviction relief rights pursuant to Rule 29.07(b). The circuit court stated, "In order to obtain review of your conviction and sentence, you must file a verified Criminal Procedure Form Number 40 within 180 days after your delivery to the

Missouri Department of Corrections; otherwise, you waive or give up your rights under Rule 29.15." Watson indicated he understood his rights. Watson listed grievances he had with trial counsel's representation, which included wanting to plead guilty to a lesser charge but being forced to go to trial.

Watson's conviction was affirmed on April 23, 2013. On May 15, 2013, the court of appeals issued its mandate. More than sixteen months later, on October 2, 2014, Watson filed his initial *pro se* motion for post-conviction relief. Watson's *pro se* motion stated he was sentenced on March 9, 2012, and "was instructed not to file this cause until [he] was delivered to the [department of corrections] by the courts making this cause timely."

The motion court appointed counsel, who subsequently filed an amended motion. Watson's amended motion attempted to explain the tardiness of his *pro se* filing. Watson averred that he was never delivered to the department of corrections to serve his sentence. The record reflected that before the robbery trial, Watson was charged with a separate criminal offense. In lieu of being delivered to the department of corrections after the robbery conviction, Watson was detained in the Saint Louis City Justice Center to undergo a pretrial psychiatric examination to determine his competency to stand trial for the separate offense. On August 4, 2014, Watson was adjudicated incompetent to stand trial for the separate offense and ordered committed to the custody of the department of mental health. The separate offense had not yet been disposed of at the time of Watson's *pro se* filing.

Watson requested that the motion court find his *pro se* motion timely because the circuit court misinformed him during sentencing regarding the deadline to file his motion. Watson understood the circuit

court's statement to mean that his motion was not due until 180 days after he was delivered to the department of corrections. Because he was never delivered to the department of corrections, Watson was under the impression that the deadline to file his *pro se* motion had not passed. Watson only discovered his tardiness after speaking to another inmate about his case. Watson also contended there was a genuine issue as to whether he understood his rights under Rule 29.15 because he was adjudicated incompetent. Finally, Watson's amended motion alleged trial counsel was ineffective for failing to submit lesser-included offense instructions for second-degree robbery and felony stealing.

The motion court recognized Watson's Rule 29.15 motion was filed untimely. The motion court further stated the circuit court was not required to inform a movant of the time limits, and a failure to inform a movant does not override the rule's mandatory time limits. However, the motion court found Watson's case did not involve the circuit court's failure to advise him of the time limit but, rather, involved a misrepresentation about the time limit. The motion court stated it would address the merits of Watson's claim out of an abundance of caution. The motion court overruled Watson's ineffective assistance of counsel claim, finding Watson was not entitled to a second-degree robbery instruction where there was evidence presented that Watson used or threatened the use of a deadly weapon or dangerous instrument during the course of the robbery. Watson now appeals.

## Standard of Review

This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013).

## Timeliness of the Rule 29.15 Motion

This Court must determine first whether it has the authority to address the merits of Watson's Rule 29.15 motion because his *pro se* motion was filed untimely. Rule 29.15(b) provides in part:

> If an appeal of the judgment or sentence sought to be vacated, set aside or corrected was taken, the motion shall be filed within 90 days after the date the mandate of the appellate court is issued affirming such judgment or sentence. If no appeal of such judgment or sentence was taken, the motion shall be filed within 180 days of the date the person is delivered to the custody of the department of corrections.

Because Watson sought an appeal from the circuit court's judgment and sentence, his Rule 29.15 motion should have been filed ninety days after the court of appeals issued its mandate, which occurred May 15, 2013. Therefore, Watson's initial *pro se* motion was due on or before August 13, 2013, but was filed on October 2, 2014, approximately sixteen months after the mandate issued.

In addition to proving his substantive claim, Watson must show he filed his Rule 29.15 motion within the time limits provided therein. *Dorris v. State*, 360 S.W.3d 260, 267 (Mo. banc 2012). The time limits for filing a Rule 29.15 motion are mandatory. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989); *Eastburn v. State*, 400 S.W.3d 770, 773 (Mo. banc 2013). Generally, when movants fail to file their Rule 29.15 motions within the applicable time limits, there is a complete waiver of the right to seek post-conviction relief and a

complete waiver regarding all claims that could be raised in a Rule 29.15 motion. *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010). Because Watson's *pro se* motion was filed untimely, he must allege facts showing "and proving by a preponderance of the evidence in his motion that he falls within a recognized exception to the time limits." *Dorris*, 360 S.W.3d at 267. While Rule 29.15 does not carve out exceptions that excuse late filings, Missouri courts recognize two exceptions: "(1) when post-conviction counsel abandons the movant; and (2) when rare circumstances outside the movant's control justify late receipt of the motion." *Moore*, 328 S.W.3d at 702.

Watson does not claim post-conviction counsel abandoned him. Instead, Watson asserts the circuit court's misinformation constituted rare circumstances that justify his failure to prepare and send his original motion in a timely manner. Watson requests this Court find the circuit court's misinformation regarding the correct filing deadline justifies creation of a new exception to Rule 29.15's mandatory filing deadlines.

### Circuit Court's Obligations Under Rule 29.07

 Rule 29.07(b)(4) provides in pertinent part:

> If a defendant has a right to proceed under ... Rule 29.15, the court at the conclusion of final sentencing shall advise the defendant of such right and shall examine the defendant as to the assistance of counsel received by the defendant. The examination shall be on the record and may be conducted outside the presence of the defendant's counsel. At the conclusion of the examination the court shall determine whether probable cause exists to believe the de-

fendant has received ineffective assistance of counsel.

"Under Rule 29.07(b), the trial court must conduct a post-sentencing hearing in which it questions the defendant concerning the effectiveness of trial counsel. The court must also advise the defendant of the right to proceed under Rule 29.15." *Moore*, 328 S.W.3d at 703. Yet the circuit court is not responsible for any breach appellate counsel commits in filing the Rule 29.15 motion and has no obligation to remedy it. *Price v. State*, 422 S.W.3d 292, 303 (Mo. banc 2014). The circuit court is obligated to provide a remedy under two discrete circumstances: (1) when a criminal defendant has received ineffective assistance of counsel that is so deficient it violates the defendant's constitutional right to effective assistance of counsel; and (2) when an indigent defendant timely files a post-conviction motion and appointed counsel's actions constitute abandonment. *Id.* This Court has yet to resolve the question presented in this case, which is what relief, if any, movants are entitled to when they rely on the circuit court's inaccurate recitation of the mandatory Rule 29.15 filing deadlines.

### Failure to Inform the Defendant

Although this case does not present the issue of the circuit court's failure to inform a movant about his or her rights under Rule 29.07(b), appellate court cases establish that movants are not entitled to relief when the circuit court provides little or no information about the filing deadlines.[1] In *Reed v. State*, 781 S.W.2d 573 (Mo. App. E.D. 1989), the court held the circuit court's failure to advise the movant of the time deadlines did not excuse an untimely filing. The appeals court explained:

1. This Court has not had occasion to resolve whether a circuit court's silence regarding the

filing deadlines runs afoul of its obligations under Rule 29.07, and it need not do so here.

While Rule 29.07(b)(4) indicates a trial judge should inform a movant of his right to a Rule 24.035 or 29.15 motion, there is no indication in the rules or case law that failure to do so overrides the mandatory time limitations. In addition, the rule does not require the sentencing court to specifically advise defendant of the ninety day time limit.

*Id.* at 573.

In *State v. Johnston*, 786 S.W.2d 220 (Mo. App. W.D. 1990), the circuit court advised the movant generally of the right to post-conviction relief but did not advise the movant of the specific time deadline. *Id.* at 222. The Western District rejected the movant's argument that his untimely post-conviction claims should be heard because the circuit court failed to advise him of the filing deadline. *Id.* The Western District stated the circuit court's general explanation complied with Rule 29.07(b)(4), despite failing to inform the movant of the specific deadline. *Id.* "We do not hold that failure of the trial court to give the advice required by Rule 29.07(b)(4) would in any way relax the time requirements within which a [post-conviction motion] must be filed . . . ." *Id.* at 222–23.

In *Hawkins v. State*, 807 S.W.2d 214 (Mo. App. W.D. 1991), the circuit court failed to inform the movant of his right to proceed under Rule 29.15 and failed to examine him regarding trial counsel's effectiveness. The movant argued these failures excused his untimely Rule 29.15 motion. The appeals court disagreed, citing and following *Reed. Id.* at 215; *see also Drewel v. State*, 835 S.W.2d 401, 402–03 (Mo. App. E.D. 1992) (rejecting the movant's untimely filing and finding case identical to *Reed* and *Hawkins* ). Hence, the circuit court's failure to inform a movant of his or her rights under Rule 29.07(b) will not excuse a tardy post-conviction motion.

### Misinforming the Defendant

There is a difference between failing to inform and misinforming movants of their post-conviction rights. Despite Watson's assertion that his case presents an issue of first impression, this Court notes only two appellate court cases have addressed instances in which the circuit court misinformed the movants about the time deadlines to file and the late filings were not excused.

In *State v. Francis*, 60 S.W.3d 662 (Mo. App. W.D. 2001), the circuit court misinformed the movant of the filing deadline under Rule 24.035, which is 180 days after the movant's delivery to the department of corrections. The circuit court told the movant the deadline was within ninety days after delivery to the department of corrections. The Western District found the movant failed to meet her burden of demonstrating the circuit court's error was prejudicial. *Francis*, 60 S.W.3d at 667. The court explained the circuit court's "only error was the recitation of the filing deadline . . ." and it was "difficult to see how this error could have been material" in this case. *Id.* at 668. Citing *Johnston* and *Reed*, the court noted that failure to inform a movant about the deadlines did not relax the filing deadlines and, therefore, "we do not believe prejudicial error can occur when the court advises a represented defendant of the *earliest* deadline a defendant faces for any post-conviction relief." *Id.* (Emphasis added). Because the circuit court provided a date that was before the deadline, the Western District found it committed no error. *Id.*

This Court finds *Francis* distinguishable from Watson's case because the circuit court informed Watson of the *latest* date to file under Rule 29.15. The circuit court stated Watson's Form 40 must be filed within 180 days after delivery to the department of corrections. This proclamation

was incorrect because Watson was required to file within ninety days after the mandate was issued. Accordingly, *Francis*'s holding that no prejudice can occur when a movant is misinformed of the earliest possible date is inapplicable here because Watson was under the mistaken impression he had the latest deadline to file his claim.

More analogous to Watson's case is *Talley v. State*, 399 S.W.3d 872 (Mo. App. E.D. 2013), wherein the movant alleged the circuit court incorrectly advised him he had 180 days after delivery to the department of corrections to file his post-conviction motion after he appealed his conviction. The movant filed his *pro se* motion two and a half years later. *Talley*, 399 S.W.3d at 874. The Eastern District rejected this claim:

> Talley's argument rests upon two unstated premises: (1) the sentencing judge's instructions were incorrect because they did not address the applicable time limitation for filing an initial motion after mandate issued; and (2) Talley would have followed that instruction if it had been given. Based upon our review of the record before us, the second premise fails. Talley's motion included an attached Exhibit A, which was one page from the sentencing hearing transcript. This exhibit shows Talley was told that he could 'file a motion to vacate this sentence, *which is waived if not filed within 180 days from the date you are sent to prison.*' Talley was delivered to the [department of corrections] on September 11, 2008. He did not file his initial Rule 29.15 motion within 180 days thereafter. Thus, the record reveals that Talley did not follow the one clear timing instruction that he received from the sentencing judge. Talley fails to persuade us—as is his burden—that he would have followed a different timing instruction relating to the issuance of

mandate, especially given *his unexplained two-and-a-half-year delay* in filing the instant motion. Therefore, any omission in the sentencing judge's instructions did not prejudice Talley or cause him to file his initial Rule 29.15 motion out of time.

*Id.* at 877 (emphasis added).

Like *Talley*, Watson did not file his motion within the circuit court's erroneously declared deadline of 180 days. However, unlike in *Talley*, Watson offers several reasons to explain his delay in filing the motion.

This Court will address each reason below.

*Independent Knowledge of Filing Deadline*

■ Watson maintains he had no independent knowledge of the filing deadline until another inmate told him his motion was late. The record also raises a fact question as to whether Watson's appellate counsel informed him of the mandate's issuance. However, a movant's ignorance of the law is no excuse for the failure to assert timely claims for post-conviction relief. *See Cheek v. State*, 776 S.W.2d 66, 67–68 (Mo. App. S.D. 1989); *Woodrome v. State*, 788 S.W.2d 544, 546 (Mo. App. S.D. 1990); *Fincher v. State*, 795 S.W.2d 505, 507 (Mo. App. W.D. 1990); *Drewel*, 835 S.W.2d at 403. Hence, under *Cheek*, *Woodrome*, *Fincher*, and *Drewel*, whether Watson had actual knowledge of the deadline is irrelevant and does not excuse an untimely filing.

*Competency to Proceed*

■ Watson raises his competency as an impediment to understanding the filing deadlines. After his sentencing, Watson was held in St. Louis city jail on separate robbery charges. In that case, the circuit court ordered a pretrial psychiatric evalua-

tion in March 2014. The circuit court adjudicated Watson incompetent on August 4, 2014. Watson did not file his *pro se* motion until October 2, 2014. Watson argues his competency raises a fact question as to whether he understood his rights and the time deadlines, thus excusing the delay.

■ An original motion is "relatively informal" and serves to notify the circuit court, the appellate court, and the state that the movant intends to seek post-conviction relief. *Bullard v. State*, 853 S.W.2d 921, 922–23 (Mo. banc 1993). "As legal assistance is not required in order to file the original motion, the absence of proper legal assistance does not justify an untimely filing." *Id.* at 923; *see also Gehrke v. State*, 280 S.W.3d 54, 57 (Mo. banc 2009).

In *Hendrickson v. State*, 400 S.W.3d 857 (Mo. App. E.D. 2013), the movant filed an untimely *pro se* motion, contending his mental disability and inability to find someone to assist him to draft his *pro se* motion excused its tardiness. The court held the lack of legal acumen and legal assistance did not excuse a late filing because neither is required to complete Form 40. *Id.* at 860; *see also State v. Harris*, 781 S.W.2d 137, 139 (Mo. App. S.D. 1989) (holding a movant's youth, limited education, and minimal contacts with the legal system did not excuse a late filing). Although mental disability differs from competency to stand trial, ultimately, Watson was able to draft and file a *pro se* motion, even after being adjudicated incompetent. This undermines Watson's argument that his competency raised a fact question regarding his ability to understand the filing requirements.

*Delivery to the Department of Corrections*

Watson argues that, because he was never delivered to the department of corrections his untimely filing is excused.

Watson maintains he did not believe the filing period began to run because he was never delivered to the department of corrections. The circuit court informed Watson he had 180 days from the date of his delivery to the department of corrections to file a claim. This information was incorrect in that the 180–day deadline only applied if Watson did not appeal his conviction.[2]

■ "Both Rule 24.035 and Rule 29.15 utilize the time at which the movant is 'delivered to the custody of the department of corrections' to mark the beginning of the time during which a motion for relief may be filed." *Self v. State*, 774 S.W.2d 576, 578 (Mo. App. E.D. 1989). However, Missouri case law is clear that there is no requirement that a person be in Missouri custody, much less in the custody of the department of corrections, to institute proceedings under Rule 29.15.

In *Dougan v. State*, 118 S.W.3d 593 (Mo. banc 2003), this Court stated Rule 29.15 was "only limited to those persons 'convicted of a felony after trial.'" *Dougan*, 118 S.W.3d at 595. While Rule 24.035 contained the requirement that the defendant be delivered to the department of corrections prior to seeking post-conviction relief, "Rule 29.15 does not require incarceration or state custody." *Id.* Hence, a defendant could seek relief despite never having been incarcerated or delivered to the department of corrections so long as that person had been convicted of a felony. *Id.*; *see also Malone v. State*, 747 S.W.2d 695, 701 (Mo. App. E.D. 1988) (holding that, even though an inmate was incarcerated in another state under a sentence imposed in that state, he may seek relief under Rule 29.15 if "convicted of a felony" in Missouri); *Woodrome*, 788 S.W.2d at 546 (rejecting the movant's argument that deliv-

---

2. The state did not respond to this argument in its brief.

ery to the Jackson County jail rather than the department of corrections after conviction tolled the time to file a motion, citing *Malone* ); *Fincher,* 795 S.W.2d at 506–07 (rejecting the movant's argument that the Rule 29.15 time deadlines did not apply because he was not in actual custody in Missouri, citing *Malone* and *Woodrome* ). Thus, not only did the delivery to the department of corrections requirement not apply to Watson because he filed an appeal, but Watson also did not have to wait until he was delivered to the department of corrections to seek post-conviction relief of his own accord.

### Right to Rely on the Circuit Court's Representations

Finally, Watson relies on *Bergdoll v. State,* 14 S.W.3d 258 (Mo. App. S.D. 2000), for the proposition that he had a right to rely on the circuit court's representations during sentencing that his Form 40 was not due until 180 days after he was delivered to the department of corrections. In *Bergdoll,* the movant relied on the circuit court's representation that he would receive appointed counsel if he filed a *pro se* motion. *Bergdoll,* 14 S.W.3d at 260. However, Rule 24.035(e) only provides for the appointment of counsel if the movant is indigent. The movant filed a deficient *pro se* motion to proceed *in forma pauperis,* and the circuit court dismissed his motion without appointing counsel. *Id.* at 260–61. The Southern District reversed, stating, "[The m]ovant ha[d] a right to rely on representations made by the trial court" and permitted the movant to receive appointed counsel. *Id.* at 261. The court cautioned its holding was confined to the unique facts of that case. *Id.*; *see also McElheny v. State,* 29 S.W.3d 861 (Mo. App. S.D. 2000) (applying *Bergdoll* to the same circuit court representations made to a movant seeking to proceed under Rule 29.15).

Additionally, other cases have granted defendants relief when they have relied on a circuit court's erroneous representations during sentencing to their detriment. In *State v. Rowan,* 165 S.W.3d 552 (Mo. App. E.D. 2005), the Eastern District, after plain error review, reversed and remanded a case for resentencing when the circuit court affirmatively misinformed the defendant during sentencing about having a better opportunity for parole if he were given a life sentence as opposed to a sentence for a terms of years. *Rowan,* 165 S.W.3d at 555–56. The Eastern District explained that, although parole eligibility was a collateral consequence of the sentence, there was "a distinction between circumstances where a defendant is advised erroneously about parole eligibility and a failure to advise at all." *Id.* at 555; *see also Brown v. Gammon,* 947 S.W.2d 437, 441 (Mo. App. W.D. 1997) (finding a movant's guilty plea was involuntary because the movant possessed a mistaken belief as to his sentence, which was attributable to the circuit court's representations, upon which the movant had a right to rely); *Pettis v. State,* 212 S.W.3d 189, 194–95 (Mo. App. W.D. 2007) (finding ineffective assistance of counsel when both the movant and the circuit court possessed a mistaken belief that his parole eligibility would not be extinguished entirely by the imposition of consecutive sentences); *Johnson v. State,* 318 S.W.3d 313, 319–20 (Mo. App. E.D 2010) (holding the movant was entitled to vacate his plea when he relied upon the plea court's erroneous representations about his eligibility for bond time credit because this representation prompted the movant's mistaken belief about the consequences of his plea). This Court recognizes these cases do not address a movant being erroneously informed about the Rule 29.15 time deadlines as *Talley* does. Yet, they all stand for the proposition that, when the circuit court misinforms defendants about

critical information upon which those defendants had a right to rely, defendants are entitled to a remedy.[3]

■ The circuit court is presumed to know and be guided by the applicable rules of civil procedure. *See Lane v. Lensmeyer*, 158 S.W.3d 218, 224 (Mo. banc 2005). Missouri law is clear: The post-conviction filing deadlines are mandatory and failure to adhere to these deadlines imposes a harsh consequence—the complete waiver of the right to seek post-conviction relief and a complete waiver regarding all claims that could be raised in a Rule 29.15 motion. Accordingly, it is imperative that, when the circuit court undertakes the obligation to explain the filing deadlines during the sentencing colloquy, the information the circuit court provides is correct, especially given the mandatory and inflexible nature of the time deadline under Rules 29.15 and 24.035.[4] To the extent that *Talley* says otherwise, it should no longer be followed.[5]

■ Watson's case presents a unique factual scenario that does not fit squarely into the third-party active interference exception recognized in *Price* because the circuit court is not a party and cannot be said to actively interfere with a movant's filing. Instead, this Court holds this case presents a new, limited exception in which an untimely post-conviction motion will be excused when the circuit court misinforms a defendant about the appropriate deadlines to file his or her motion during the sentencing colloquy. Accordingly, this Court holds that, although Watson filed an untimely Rule 29.15 motion, the untimeliness is excused because the circuit court misinformed him about the appropriate deadlines to file his motion during his sentencing colloquy and he was entitled to rely upon this misinformation when determining the filing deadline. This Court next addresses the merits of Watson's Rule 29.15 motion.

3. While the dissenting opinion insists the circuit court made correct statements concerning the filing deadline that would apply to most defendants, there is no doubt that the deadline recited did not apply to Watson. The dissenting opinion dismisses Watson's reliance on the circuit court's misinformation as an unfortunate choice and places upon him the burden to independently verify the circuit court's misinformation without citation to any caselaw that requires him to do so. Concurrently, the dissenting opinion recognizes that the vast majority of defendants undoubtedly benefit from the circuit court's advisement of the filing deadlines. Under this logic, a movant who relies upon fortuitously correct and complete information is undoubtedly benefited, while a movant who relies upon misinformation is deemed to have chosen incorrectly and is entitled to no remedy. This cannot be the case when the circuit court is presumed to know the law and generally takes care to inform movants properly of their rights.

4. This opinion should not be read to encourage sentencing courts to remain silent or omit all reference to the filing deadlines during the

Rule 29.07 colloquy. Contrary to the dissenting opinion's assertion, a prudent sentencing court should either provide the defendant with a copy of Rule 29.15 or Rule 24.035 or recite the precise language contained in Rule 29.15(b) regarding the deadlines.

5. While the dissenting opinion expresses concern about sentencing courts taking the risk of accidentally stating a deadline that does not apply to a particular defendant, this Court notes only *Francis* and *Talley* have presented such a circumstance, demonstrating that virtually all sentencing courts properly advise defendants of their rights and the appropriate deadlines. Notably, *Talley* does not cite *Francis* or any other case to support its proposition that, when a circuit court misinforms the movant about the filing deadlines, the movant must demonstrate he would follow an erroneous instruction to excuse the untimely filing. Further, *Talley* has not been cited for this proposition by any other appellate court, and the movant in *Talley* did not file an application for transfer with this Court when the case was decided.

### Ineffective Assistance of Counsel

 Watson argues the motion court clearly erred in overruling his Rule 29.15 motion without an evidentiary hearing because he alleged facts, not refuted by the record, which if true, warrant relief. Watson argues trial counsel was ineffective for failing to submit a lesser-included offense instruction for second-degree robbery or for felony stealing. Watson maintains he was prejudiced by trial counsel's ineffectiveness because, but for this error, there is a reasonable probability the outcome of his trial would have been different.

 To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Watson must demonstrate: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure. *Id.* at 687, 104 S.Ct. 2052.

 Watson must overcome the strong presumption that trial counsel's conduct was reasonable and effective. *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). To overcome this presumption, a movant must identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009). Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable. *Id.* "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Anderson v.*

*State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2052). To be entitled to an evidentiary hearing, Watson's motion "must: (1) allege facts, not conclusions, warranting relief; (2) raise factual matters that are not refuted by the file and record; and (3) raise allegations that resulted in prejudice." *Johnson*, 406 S.W.3d at 898.

 To prevail on a claim that counsel was ineffective for failing to request a lesser-included offense instruction, Watson must demonstrate "the evidence would have required the trial court to submit the instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that prejudice resulted." *McCrady v. State*, 461 S.W.3d 443, 448 (Mo. App. E.D. 2015). "Even where the evidence supports the submission of a lesser-included offense instruction, [Watson] must still overcome the presumption that counsel's decision not to request the instruction was reasonable trial strategy." *Id.*

Section 569.020, RSMo 2000,[6] provides that a person is guilty of first-degree robbery when he or she forcibly steals property and, in the course thereof, he or she, or another participant in the crime, either: (1) causes serious physical injury to any person; or (2) is armed with a deadly weapon; or (3) uses or threatens the immediate use of a dangerous instrument against any person; or (4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. Watson was charged and convicted under subsection (4), displaying or threatening the use of what appeared to be a gun during the robbery. By contrast, second-degree robbery only would require the state to prove Watson forcibly stole property. Section 569.030.1. The differential el-

---

**6.** All statutory references are to RSMo 2000.

ement between these two offenses is whether Shull subjectively, but reasonably, believed the object Watson flashed at her and held in his jacket pocket throughout the robbery—and used or threatened to use to force her to do what he wanted—was a gun. *State v. Jackson*, 433 S.W.3d 390, 399 (Mo. banc 2014).

Second-degree robbery is a nested lesser-included offense of first-degree robbery because " 'it is *impossible to commit* the greater without *necessarily committing* the lesser." *Id.* at 404 (quoting *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002)). "[S]econd-degree robbery requires the state to prove beyond a reasonable doubt that the defendant took the victim's property by force. First-degree robbery requires proof of those same elements and proof ... of the differential element that the victim reasonably believed the defendant was using or threatening to use a weapon." *Id.* Thus, the circuit court commits reversible error when it refuses a defendant's requested nested lesser-included offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw. *Id.* at 392. In this case, the evidence presented would have required the circuit court to submit a second-degree robbery instruction had trial counsel requested one. Because trial counsel did not request any lesser-included instruction, Watson must demonstrate trial counsel's decision not to request the second-degree robbery instruction was not reasonable trial strategy. *McCrady*, 461 S.W.3d at 448.

Watson's amended Rule 29.15 motion alleged he "trusted trial counsel" to request all instructions relevant to his defense, including lesser-included offense instructions if applicable. Watson stated he would testify at an evidentiary hearing that trial counsel never advised him that he could submit a lesser-included offense instruction. Watson further alleged trial counsel would testify he did not submit the lesser-included offense instructions and had no reasonable trial strategy for failing to do so. However, in the next sentence, Watson claimed he anticipates trial counsel would testify the defense strategy utilized at trial was that the state failed to meet its burden of proof on an essential element of first-degree robbery because Watson did not have a gun and did not display what appeared to be a dangerous instrument or deadly weapon.

During closing argument, trial counsel repeatedly asserted Shull was mistaken about seeing a gun and argued videotaped surveillance refuted her testimony. Trial counsel argued Watson did not commit an essential element of first-degree robbery because the state did not meet its burden of proving Watson displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument. Trial counsel conceded the state proved the first two elements of robbery, but then argued the state's case failed because no gun was used during the robbery. Trial counsel further argued that Watson was not guilty of armed criminal action because no weapon was used during the commission of the robbery. The jury acquitted Watson of the armed criminal action charge.

The state argues trial counsel's argument demonstrates he pursued an "all-or-nothing" defense in which trial counsel's strategy was to deny the jury the opportunity to compromise between first-degree robbery and an acquittal by failing to offer a lesser-included instruction. "All-or-nothing" defenses have been upheld as sound trial strategy. *See Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984); *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo. App. S.D. 2011); *McCrady*, 461 S.W.3d at 450–51. However, in each of those cases, the

movant was afforded an evidentiary hearing in which trial counsel explained the failure to request lesser-included instructions was in pursuit of an "all-or-nothing" defense, which trial counsel believed was the best defense for the client. Here, Watson's claim was denied without an evidentiary hearing and without the benefit of trial counsel articulating what, if any, strategy he employed in defending Watson.

 "To establish relief under *Strickland*, a movant must prove prejudice." *Johnson*, 406 S.W.3d at 899. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). In this context, "prejudice" means a reasonable probability that the outcome of the trial would have been different if the second-degree robbery instruction had been given. *McNeal v. State*, 412 S.W.3d 886, 889 (Mo. banc 2013) (hereinafter, "*McNeal I*").

 Watson's case is strikingly similar to *McNeal I*, in which this Court held the movant was entitled to an evidentiary hearing to determine whether trial counsel was ineffective when he effectively conceded the defendant committed a lesser-included offense but failed to request an instruction on the lesser-included offense in the hopes of obtaining an acquittal on the greater offense. This Court explained

the movant suffered prejudice, even though he had been convicted of the greater offense:

> [T]he underlying rationale is that the failure to provide the jury with the option of a lesser-included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense. Without a trespass instruction, the jury was left with only two choices: conviction of burglary or acquittal. When one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. Even though juries are obligated as a theoretical matter to acquit a defendant if they do not find every element of the offense beyond a reasonable doubt, there is a substantial risk that the jury's practice will diverge from theory when it is not presented with the option of convicting of a lesser offense instead of acquittal. Therefore, under the facts of this case, the jury's decision to convict on a greater offense does not foreclose all possibility that the jury would have convicted the defendant of the lesser offense. The jury's decision may make it difficult for a post-conviction movant to prove prejudice, but it does not necessarily preclude a finding of prejudice as a matter of law such that a movant ... never can obtain an evidentiary hearing.

*Id.* at 892 (internal quotations and citations omitted).[7]

---

7. The dissenting opinion claims this Court's opinion in *McNeal v. State*, 500 S.W.3d 841 (Mo. banc 2016) ("*McNeal II*") unanimously rejected the holding in *McNeal I*. However, there is no statement to that effect in *McNeal II* or any substantive discussion of how the analysis in *McNeal I* and the cases it relied upon to grant the movant an evidentiary hearing were overruled or erroneously decided. "Generally, this Court presumes, absent a

contrary showing, that an opinion of this Court has not been overruled *sub silentio*." *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Id.* (quoting *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting)). Had *McNeal II* intended to

Watson's case presents the same issue. Watson was convicted of first-degree robbery. Yet the evidence presented would have required the circuit court to submit a second-degree robbery instruction had trial counsel requested one. Moreover, trial counsel effectively conceded during his closing argument that Watson committed second-degree burglary but disputed the differential element that Shull reasonably believed Watson was using or threatening to use a weapon. In contrast to the other "all-or-nothing" cases, trial counsel did not argue Watson was innocent of the crime. Without an evidentiary hearing to ascertain trial counsel's strategy, the record does not refute Watson's claim in favor of a finding that trial counsel employed an "all-or-nothing" strategy to overrule Watson's Rule 29.15 claim.

Just as in *McNeal I*, Watson alleged facts, not clearly refuted by the record, demonstrating he was prejudiced by trial counsel's failure to request lesser-included offense instructions in that there was a reasonable basis in the evidence for acquitting him of first-degree robbery and convicting him of second-degree robbery. Watson is entitled to an evidentiary hearing.

### Conclusion

The circuit court's judgment is reversed, and the case is remanded for an evidentiary hearing.

---

abrogate *McNeal I*, any discussion beyond citation to the objective reasonableness standard was superfluous. Yet this Court's analysis in *McNeal II* continued to discuss in detail trial counsel's testimony from the evidentiary hearing, wherein trial counsel "repeatedly explained" why he failed to request a lesser-included instruction. *McNeal II*, 500 S.W.3d at 844. If trial counsel's testimony was irrelevant to the analysis, as the dissenting opinion now claims, perhaps *McNeal II* should have omitted that analysis and stated outright that *McNeal I* was overruled. The fact that the

Breckenridge, C.J., Stith and Russell, JJ., concur; Fischer, J., dissents in separate opinion filed; Wilson, J., concurs in opinion of Fischer, J. Powell, J., not participating.

Zel M. Fischer, Judge, dissenting.

I respectfully dissent. Watson was required to allege facts showing both that his untimely initial motion "falls within a recognized exception to the time limits" and that he is entitled to relief on the substantive claim in his amended motion. *Dorris v. State*, 360 S.W.3d 260, 267 (Mo. banc 2012). Watson did neither.

### Watson's Untimely Motion is Not Excused by a Recognized Exception

There are only two exceptions that excuse the untimely filing of a Rule 29.15 motion: "(1) when post-conviction counsel abandons the movant; and (2) when rare circumstances **outside the movant's control** justify late receipt of the motion." *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010) (emphasis added). Watson argues he falls under the second exception. In *Price v. State*, 422 S.W.3d 292 (Mo. banc 2014), this Court explained the second exception applies when a movant "**takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time**" but

---

movant's claims were clearly refuted by the record gleaned from the evidentiary hearing underlies this Court's unanimous decision in *McNeal II*, not an unstated abrogation of the analysis in *McNeal I*. Likewise, this Court's analysis in *Dorsey v. State*, 448 S.W.3d 276, 295 n.13 (Mo. banc 2014), came after the movant was afforded an evidentiary hearing wherein counsel offered no explanation for his strategy in failing to call a witness, and *Dorsey* did not state it overruled or abrogated *McNeal I*.

"the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely." *Id.* (emphasis added). It does not apply when the movant "did not do all that he could do to effect a timely filing of his Rule 29.15 motion," i.e., when the movant takes "no steps to meet (or even calculate) the applicable filing deadline for his motion." *Id.* Watson took no steps to calculate the deadline that applied to his circumstances or verify the filing deadline stated by the circuit court. Therefore, he did not do all he could do to ensure the timeliness of his motion. There was also no "active interference of a third party," which narrowly refers only to actions taken by those on whom the movant must rely, but cannot control, in taking the final step of physically filing the initial motion with the correct court.[1] *Id.* The circuit court's incomplete statement[2] had absolutely no bearing on this step in the process. Accordingly, Watson "cannot benefit from the exception to Rule 29.15 ... for circumstances in which a reasonable, good faith effort by the inmate to write and timely file an initial motion under Rule 29.15(b) is frustrated by the active interference of a third party on whom the inmate had to rely but could not control." *Id.* at 303.

Accepting that Watson does not fall under any **recognized** exception, the principal opinion endeavors to create a third exception to excuse Watson's untimely filing. In doing so, the principal opinion strays from the basic justification underlying both established exceptions: that the motion was untimely through no fault of the movant. This is why the first exception, abandonment by counsel, does not apply when "counsel's apparent inattention results from movant's negligence or intentional failure to act." *Luleff v. State*, 807 S.W.2d 495, 498 (Mo. banc 1991). And this is also why the second exception, rare circumstances outside the movant's control, does not apply when the movant has not done all he can do to file a timely motion. *Price*, 422 S.W.3d at 302. But under these circumstances, Watson is not without fault. The circuit court made correct statements concerning the filing deadlines that would apply to most defendants. The circuit court just did not cover the filing deadline for every scenario that could occur following sentencing. It was still Watson's responsibility to verify and comply with the filing deadline that applied to his facts and circumstances. Nothing precluded him from doing so. "[T]he initial motion under Rule 29.15(b) requires no legal expertise or assistance and is designed to be an informal filing that can be completed by an inmate acting alone." *Id.*

Moreover, as the principal opinion recognizes, Rule 29.07(b)(4) does not require a sentencing court to advise of the filing

---

1. The second exception "arises out of the practical reality that an inmate cannot comply with Rule 29.15 without relying on a third party to some extent." *Price*, 422 S.W.3d at 302. "Rule 29.15(b) requires that the inmate *'shall file'* this motion in the sentencing court and an inmate, by definition, cannot comply with such a requirement on his own." *Id.* (emphasis added in original). "Instead, inmates—unlike nearly every other category of civil litigants—cannot initiate post-conviction proceedings without relying on the assistance of one or more third parties to take the mo-

tion from the inmate and deliver it to the circuit clerk for filing." *Id.*

2. At sentencing, the circuit court stated: "In order to obtain review of your conviction and sentence, you must file a verified Criminal Procedure Form Number 40 within 180 days after your delivery to the Missouri Department of Corrections; otherwise, you waive or give up your rights under Rule 29.15." The circuit court's statement was incomplete because the stated deadline applies only when an appeal is not taken. *See* Rule 29.15(b).

deadlines for post-conviction relief motions, and any failure to so advise will not excuse an untimely motion. In holding that, unlike a sentencing court's silence, a sentencing court's incomplete statement of all the potential deadlines *will* excuse an untimely motion, the practical effect of the principal opinion is that prudent sentencing courts will choose to stay silent concerning filing deadlines. This is not a positive result for the vast majority of defendants, who undoubtedly benefit from being advised of the filing deadlines that would generally apply to them at the earliest opportunity.[3] Nevertheless, following the principal opinion, any sentencing court that chooses to advise of the filing deadline necessarily takes the risk of accidentally stating a deadline that does not apply to a particular defendant's circumstances. Rather than take a risk that a statement concerning the applicable post-conviction deadline will be incomplete for every factual scenario not yet known, sentencing courts will remain silent as to any filing deadline for the original motion or, at most, just make a record that the defendant was given a copy of the rule at the completion of sentencing.

## Watson Did Not Plead Facts Warranting Relief

Even if Watson's untimeliness were excusable, he is not entitled to an evidentiary hearing on his motion. To be entitled to an evidentiary hearing, a movant must plead facts that, if true, would warrant relief. *Goodwin v. State*, 191 S.W.3d 20, 24–25 (Mo. banc 2006). If a movant fails to do so, "a hearing shall not be held." Rule 29.15(h). Pursuant to the test set forth in

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a movant must prove both a performance prong and a prejudice prong to warrant relief for an ineffective assistance of counsel claim. Failure to prove either prong defeats such a claim. *See Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012). Regarding the performance prong, to be entitled to an evidentiary hearing, a movant must allege facts showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Watson's claim fails on this first prong.

The principal opinion erroneously holds Watson has met the pleading requirement by merely alleging his trial counsel would testify he had no strategy in foregoing the lesser-included offense instructions. The principal opinion recognizes a reasonable attorney may have foregone the instructions but nevertheless suggests the performance prong of the *Strickland* test depends on whether Watson's trial counsel confirms or denies at an evidentiary hearing that he consciously employed a strategy in foregoing the instructions. This is not how the *Strickland* test works. Watson received the same performance—foregoing the instructions—regardless of whether it was the result of strategy or inadvertence. This is why "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). That means the performance prong depends only on whether any attorney, acting reasonably under the circumstances, would have fore-

---

**3.** "The time limits in Rules 24.035 and 29.15 serve the legitimate end of avoiding delay in the processing of prisoner's claims and prevent the litigation of stale claims." *Dorris*, 360 S.W.3d at 269 (internal quotations omitted). "If a meritorious collateral claim exists, the rule is designed to bring it to the fore promptly and cogently. No one, least of all prisoners, stand to gain from a prolonged ... post-conviction process." *Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978).

gone the lesser-included offense instructions.[4] The principal opinion's assertion that there must also be an inquiry into whether this particular attorney subjectively pursued a strategy in foregoing the instructions is directly contrary to what the Supreme Court of the United States has held regarding the performance prong:

> Although courts may not indulge *"post hoc* rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, **neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.** There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." After an adverse verdict at

trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. ***Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.**

*Harrington v. Richter*, 562 U.S. 86, 109–10, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (emphasis added) (internal citations omitted).

That the *Strickland* test of objective reasonableness does not turn on trial counsel's subjective reasons—or lack thereof—in rendering performance is undoubtedly well-established.[5] In fact, this Court has

---

**4.** Watson's counsel argued at trial that Watson did not commit one of the elements of first-degree robbery because he did not display or threaten the use of what appeared to be a deadly weapon or dangerous instrument. He repeatedly reminded the jury that it was necessary to find all the elements and, because the State did not prove this particular element, the jury had to find Watson not guilty. Consistent with this argument, any attorney acting reasonably in the same circumstances could have foregone the lesser-included offense instructions in the hopes of outright acquittal, rather than submit the instructions and practically ensure a conviction based on the undisputed elements.

**5.** *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); *Allen v. United States*, 829 F.3d 965, 968 (8th Cir. 2016) (rejecting argument that an evidentiary hearing was necessary to determine counsel's subjective reason for challenged performance because the performance was objectively reasonable); *Wilder v. United States*, 806 F.3d 653, 660 (1st Cir. 2015) ("[T]he ineffective assistance of counsel inquiry is concerned with objective reasonableness rather than what counsel did or did not know."); *Boyer v. Chappell*, 793 F.3d 1092, 1102 n.6 (9th Cir.

2015) (noting it was immaterial that trial counsel stated his challenged performance was not based on a tactical decision); *Williams v. Trammell*, 782 F.3d 1184, 1201 (10th Cir. 2015) ("Nor is there a need for a hearing under *Strickland*, where our concern is the *objective reasonableness* of the lawyer's conduct—not the lawyer's *subjective* reasoning."); *Castillo v. Florida*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland's* performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons."); *Thomas v. Varner*, 428 F.3d 491, 501 n.10 (3d Cir. 2005) ("[I]t is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. ... Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds."); *Moody v. Polk*, 408 F.3d 141, 151 n.6 (4th Cir. 2005) (recognizing immateriality of counsel's admission that challenged performance "was not a tactical decision" because the relevant question is whether the challenged performance was objectively reasonable).

recently reaffirmed this principle on multiple occasions. In *Dorsey v. State*, 448 S.W.3d 276, 295 n.13 (Mo. banc 2014), this Court rejected the movant's argument that the performance prong was proved by trial counsel's inability to explain why he did not call a certain witness: "The fact that Mr. Slusher could not explain why he did not contact Dr. Lyskowski does not necessarily mean he was ineffective. . . . **So long as Mr. Slusher performed as a reasonably competent attorney would, his subjective reasoning behind his performance is irrelevant.**" (Emphasis added). Likewise, in *McNeal v. State (McNeal II)*, 500 S.W.3d 841, 844 (Mo. banc 2016), this Court rejected the movant's argument that the performance prong was proved because trial counsel's performance was not based on a strategic decision: "**[W]hether counsel's performance was the product of a conscious decision is immaterial— what matters is whether counsel's performance was objectively reasonable, however it came about.**" (Emphasis added).

The fallacy in the principal opinion is its reliance on *McNeal v. State (McNeal I)*, 412 S.W.3d 886 (Mo. banc 2013), while ignoring *McNeal II*. Like Watson here, the movant in *McNeal I* alleged his trial counsel failed to request a lesser-included offense instruction due to inadvertence rather than strategy, and, in a split decision, this Court remanded for an evidentiary hearing on the allegation. *Id.* at 889–91. Following the evidentiary hearing, however, this Court unanimously held in *McNeal II* that whether the movant's trial counsel had foregone the lesser-included offense instruction due to inadvertence or strategy was immaterial because all that mattered was whether foregoing the instruction was objectively reasonable. 500 S.W.3d at 844. In other words, the theoretical underpinning of *McNeal I*—that a movant could establish the performance prong by prov-

ing at an evidentiary hearing that counsel's performance was a result of inadvertence rather than strategy—was subsequently expressly rejected in *McNeal II*. *See id.*; *see also Dorsey*, 448 S.W.3d at 295 n.13. In short, *McNeal I* was an inexplicable departure from the Supreme Court's, as well as this Court's, application of the *Strickland* test. *See Harrington*, 562 U.S. at 109–10, 131 S.Ct. 770; *Yarborough*, 540 U.S. at 8, 124 S.Ct. 1; *Flores–Ortega*, 528 U.S. at 481, 120 S.Ct. 1029; *Love v. State*, 670 S.W.2d 499, 501–02 (Mo. banc 1984). As reestablished by this Court in *McNeal II* and *Dorsey*, the performance prong does not turn on trial counsel's subjective reasoning. To the extent it held otherwise, *McNeal I* has not been followed by this Court and should not be followed now.

Notably, aside from *McNeal II*, the principal opinion makes no effort to dispute or distinguish the cases cited herein. This includes this Court's opinion in *Dorsey*, which mirrors the holding of *McNeal II* and is just as irreconcilable with the principal opinion. Instead, the principal opinion clings to the aberration of *McNeal I*, ignoring the mountain of authority against it. Apparently, the principal opinion believes this Court should even ignore the Supreme Court on this issue. Certainly, the majority in *McNeal I* did not intend to do so. But none of the Supreme Court cases cited herein (other than *Strickland*) were acknowledged in *McNeal I*, nor were any of them cited in the briefs before this Court. Given that these Supreme Court cases have now been brought to this Court's attention, there is no logical justification for perpetuating *McNeal I*'s departure from settled law.

"If anything turned on counsel's precise thought process, we would remand for an evidentiary hearing, but in this case none is necessary. The *Strickland* test, as already noted, is an objective one; **as long**

as counsel performed as a competent lawyer would, his or her detailed subjective reasoning is beside the point." *Cofske v. United States*, 290 F.3d 437, 444 (1st Cir. 2002) (emphasis added). Because it was objectively reasonable for Watson's trial counsel to forego the lesser-included offense instructions, it does not matter whether trial counsel subjectively lacked a strategy in doing so. Even if trial counsel indeed testified at an evidentiary hearing that he had no strategy in foregoing the instructions, this would not prove the performance prong. *See McNeal II*, 500 S.W.3d at 844; *Dorsey*, 448 S.W.3d at 295 n.13; *Love*, 670 S.W.2d at 501–02. The principal opinion does not, and cannot, dispute that this would be the case, as controlled by *McNeal II*, *Dorsey*, and *Love*. Despite the fact Watson's allegation cannot warrant relief even if proved at an evidentiary hearing, the principal opinion remarkably holds his allegation still warrants an evidentiary hearing. This is not only a waste of judicial resources but an unnecessary burden on the prosecuting attorney and two public defenders (one who will be called upon to testify and one who will interrogate, both as to the irrelevant matter of counsel's subjective reasoning in not requesting lesser-included offense instructions). Contrary to the principal opinion's misguided application of the *Strickland* test, Watson is not entitled to an evidentiary hearing for the simple reason that he has not pleaded facts that, if true, would warrant relief.