

# In the
# Missouri Court of Appeals
# Western District

**NATHAN CANFIELD,**
          **Appellant,**

**v.**

**STATE OF MISSOURI,**
          **Respondent.**

**WD84989**
**OPINION FILED:**
**May 2, 2023**

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Joshua C. Devine, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Alok Ahuja, Judge and Lisa White Hardwick, Judge

Nathan Canfield ("Canfield") appeals the judgment of the Circuit Court of Boone County, Missouri ("motion court"), denying, after an evidentiary hearing, Canfield's motion for post-conviction relief pursuant to Rule 24.035.[1]  On appeal, Canfield claims that the motion court clearly erred in denying his motion because he established that his plea counsel ("Counsel") was ineffective in that he failed to fully investigate his case, and

---

[1] All Rule references are to Missouri Court Rules (2018).

had Counsel adequately investigated, Canfield would not have pled guilty. We affirm the judgment of the motion court.

## Factual and Procedural Background

On July 16, 2018, Canfield pled guilty to: Count I, stalking in the first degree; Count II, harassment in the first degree; Count III, resisting a lawful stop; and Counts IV, V, and VI, each for violating an order of protection. At the plea hearing, the State set forth the factual basis for the plea:

> On September 17 of 2017, the defendant sent his wife, J.C., a threatening e-mail. He then followed through with a threat that he made in that e-mail on the 19th of September, which involved posting private photographs of her on the internet.
>
> On the 21st, two days later, he was served with an order of protection prohibiting him from being at J.C.'s place of employment, or making any contact with her, or trying to contact her through third parties. On the same day, after being served, he went to her place of business in violation of that order of protection.
>
> He then continued to contact J.C. by e-mail two days later. And then tried to interfere with their children at their church when he knew J.C. to be there with the children on October 1.
>
> On September 20, as alleged in Count II, he sent J.C.'s co-worker 50 text messages within three hours without receiving any response from her. He threatened to create bad publicity for the co-worker, K.R., and her company if the co-worker did not comply with his demands. And he said that he is just trying to make everyone else's life as miserable as his right now. He acknowledged that he was making threats, and the business shut down as a safety precaution for a few days.
>
> As to Count III, on October 3, when the defendant saw law enforcement officers parked at his business, he left the parking lot and fled in his vehicle when law enforcement officers were trying to stop him with their lights activated.
>
> As to Count IV, on November 29, 2017, he called J.C. in violation of that order of protection twice from the jail. On the same date, he called C.C. and asked her to contact J.C. for him. And then on that same date, as alleged in Count VI, he contacted K.C., asking that person to contact J.C. on his behalf. And in those calls he admitted he was a stalker.

2

Canfield agreed with the prosecutor's statement and affirmed that he was pleading guilty because he was guilty. Canfield also affirmed that he had had ample opportunity to discuss the case with his attorneys, that there was nothing that he asked them to do that they did not do, and that he had no complaint "at all" about the way they had represented him. Canfield also affirmed in his testimony that he understood that the court would order a sentencing assessment report and that there were several possibilities as to a final outcome: he could be sentenced up to the maximum of four years on Counts I and II, but with execution of the sentences suspended so that he could be put on probation (SES); that he could be put on probation without having any sentence imposed (SIS); or that the court might do something different than what the prosecutors thought was appropriate or than what his counsel requested on his behalf.

At his sentencing hearing, Canfield did not object to anything in his sentencing assessment report, which the sentencing court noted detailed behavior and statements that were "horrifying really." (L.F. 29, p. 29). The sentencing court acknowledged that with no prior record, Canfield's case seemed like a "slam dunk for probation[, a]nd on the defendant's part even for an SIS." But the court expressed concern for the wellbeing and safety of the victims "not only his wife, but his children, and even—you know you could see her employer—I mean, she hired police officers off duty to secure the building." The court stated, "He has created terror, and I don't trust that it's over." After receiving input from J.C., the prosecutor, the probation officer, and Canfield's counsel, the court sentenced Canfield to four years for each of the felony counts, to run consecutive to each other, and essentially time served on the four misdemeanor counts. The court suspended the

3

execution of the sentences in Counts I and II (the felony counts) and placed Canfield on probation for five years, such probation including no contact with J.C. or K.R. by any means whatsoever, completion of a batterer's intervention program and treatment court, and GPS monitoring of Canfield. After sentence was pronounced, Canfield affirmed that he still believed he had effectively been represented by counsel.

On May 10, 2019, Canfield's probation was revoked because he failed to complete the batterer's intervention program and failed to complete treatment court. He was ordered delivered to the Department of Corrections for execution of his sentence. At that hearing Canfield once again affirmed that he believed he had been effectively assisted by his counsel.

On September 16, 2019, Canfield filed his Rule 24.035 motion.[2] His amended motion, filed by appointed counsel, included a claim that his plea counsel was ineffective in failing to investigate the charges against Canfield, in failing to request a bill of particulars to determine the details of the charges against Canfield, and in failing to adequately advise Canfield regarding the particulars of the charges. [3]

---

[2] Although presently and at the time of Canfield's sentencing Rule 24.035 requires post-conviction motions to be filed within 180 days of a movant's sentencing, Canfield was erroneously informed by the sentencing court that his Rule 24.035 motion needed to be filed within 180 days of his delivery to the Department of Corrections, which was the rule through 2017. Because Canfield was misinformed of the deadline for filing his motion, his out-of-time filing is excused. *Watson v. State*, 520 S.W.3d 423, 434 (Mo. banc 2017). The State agreed that under these facts his motion was filed timely, and timeliness of the motion is not at issue in this appeal. Also, while our Supreme Court has recently reaffirmed that the deadlines for filing under Rule 24.035 are mandatory and cannot be waived, *Hatmon v. Missouri*, SC99591, March 21, 2023, *Hatmon* cites a 2016 Court of Appeals case for this proposition and does not cite *Watson* and similar cases, nor does it directly address the defendant's being misinformed of the filing deadline by the sentencing court, and so it does not change our analysis.

[3] Canfield's motion made additional claims, but they are not raised in this appeal, and so we do not address them herein.

On August 4, 2021, the motion court held a hearing on Canfield's motion at which he and his plea counsel testified. Canfield testified that if his plea counsel had fully investigated the charges and fully advised him regarding the details or particulars of the charges, he would not have pled guilty. He also testified that he had a bachelor of science degree and understood the English language, but that he was under "extreme duress" from being held in the jail for approximately ten months while awaiting trial. He testified that the conditions of his confinement and the duress resulting therefrom prevented him from making a logical, reasonable decision for his best interests, and he would have said anything to get himself out of that situation. He acknowledged that he had repeatedly expressed satisfaction with his counsel, including at his revocation hearing, at which time he had not been confined, but stated that he had "a very difficult time confronting somebody about their inability to do their job" because he felt it was rude.

Plea counsel testified that he had investigated all of Canfield's charges during the representation, had reviewed all of the written reports and forwarded them to Canfield, and would have reviewed all of the other discovery materials that had been provided to him. Counsel testified that he had discussed all matters with Canfield including "various different investigative procedures." Counsel testified that Canfield's financial resources somewhat limited his ability to take depositions, but Canfield also did not want to depose his wife, who was the primary witness and victim in the case, because he was hopeful of reconciling their marriage. Finally, Counsel testified that he did not request a bill of particulars because by the time it would have been appropriate to request a bill of particulars, they had nearly all of the discovery in terms of informing them of the

5

approximate dates, times, and details of each of the charges so he did not feel that a bill of particulars was necessary. Counsel thought that through his investigations and discussions with Canfield, he was able to determine what the State was charging, what witnesses and evidence would be brought to bear by the State, and what, if any, defenses they would be able to mount to those charges.

The motion court denied Canfield's motion, determining that Canfield's motion was properly considered even though it was out-of-time, but that Canfield had failed to establish that his plea counsel was ineffective. This appeal follows.

**Standard of Review**

Appellate review of the motion court's action on a motion pursuant to Rule 24.035 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Bogard v. State*, 356 S.W.3d 850, 852-53 (Mo. App. W.D. 2012). The motion court's findings and conclusions are presumptively correct. *Lee v. State*, 97 S.W.3d 9, 13 (Mo. App. W.D. 2002). The motion court's findings and conclusions are clearly erroneous only when a review of the entire record leaves the appellate court with a firm and definite impression that a mistake has been made. *Eberspacher v. State*, 915 S.W.2d 384, 386 (Mo. App. W.D. 1996).

**Analysis**

Canfield's sole point on appeal is that the motion court clearly erred in denying his motion for post-conviction relief because his plea counsel was ineffective for failing to investigate the charges against him and to request a bill of particulars. We disagree.

6

To sustain his burden of proving that he received ineffective assistance of counsel, Canfield must prove by a preponderance of the evidence that Counsel failed to exercise the level of skill and diligence of a reasonably competent attorney and that he was prejudiced by Counsel's ineffective performance. *Jones v. State*, 541 S.W.3d 694, 697 (Mo. App. W.D. 2018). When a defendant has pled guilty, the movant must show that, but for his counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Eberspacher v. State*, 915 S.W.2d 384, 386 (Mo. App. W.D. 1996). "When a conviction results from a plea of guilty, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges upon the voluntariness and knowledge with which the plea was made. *Id.*

More specifically, where a movant alleges that his guilty plea was involuntary because his plea counsel failed to engage in an adequate investigation, the movant must allege and prove what evidence counsel failed to discover and how that undiscovered evidence would have affected the proceeding.

> In order to succeed on a claim of ineffective assistance of counsel based on inadequate preparation or investigation, [the movant is] required to allege what information plea counsel failed to discover; that a reasonable investigation or preparation would have resulted in the discovery of such information; and that the information would have aided or improved his defense.

*State v. Evans*, 524 S.W.3d 530, 534 (Mo. App. E.D. 2017) (quoting *Gooch v. State*, 353 S.W.3d 662, 666 (Mo. App. S.D. 2011)); *see also Collins v. State*, 447 S.W.3d 222, 224 (Mo. App. S.D. 2014).

In this case, Canfield has utterly failed to allege any basis to establish how his plea counsel erred by failing to investigate or to request a bill of particulars. Canfield does not

7

allege what possible exculpatory evidence or information Counsel could have found by further investigation. He does not allege whom Counsel should have interviewed or what further investigation or actions that Counsel should have undertaken. Counsel testified as to his efforts to investigate the charges against Canfield and the information he provided to Canfield regarding the charges and the evidence the State would use against him should the case proceed to trial. As for the bill of particulars, Counsel reasonably testified that a bill of particulars was unnecessary as he was able to determine what the State was charging, what witnesses and evidence would be brought to bear by the State, and what, if any, defenses they could mount against those charges. Canfield fails to even attempt to show what his defense might have gained by the filing of a bill of particulars.

Moreover, the motion court was justified in finding Canfield's current complaints not to be credible, given that Canfield expressed his satisfaction with his plea counsel repeatedly during his multiple hearings. He was questioned about his satisfaction with Counsel's performance at his plea hearing, at his sentencing hearing, and at his probation revocation hearing; at each opportunity he expressed satisfaction with his counsel. Canfield now claims that his earlier statements of satisfaction should be disregarded, because he was under "extreme duress" from his pre-trial confinement, which would apply to countless criminal defendants, and that he had a hard time confronting his counsel about his inability to do his job because he sees it as rude. The motion court could find it disingenuous that Canfield would choose a possible prison sentence over being "rude" to his attorney; and Canfield's claim of "extreme duress" does not apply to his expression of

8

satisfaction with counsel at his probation revocation hearing, after he had spent several months in the community on probation.

We conclude that Canfield has completely failed to establish that Counsel's performance was deficient or that he was prejudiced in any manner by Counsel's representation of him. Accordingly, Canfield's single point on appeal is denied.

## Conclusion

For all of the above-stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Judge

All concur