

# Missouri Court of Appeals

## Southern District

### In Division

ROBERT A. VALLEY,                )

                          )

          Appellant,      )

                          )  No. SD37653

    vs.                   )

                          )  FILED:  November 14, 2023

STATE OF MISSOURI,        )

                          )

          Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY

Honorable Michael J. Randazzo, Judge

## AFFIRMED

Robert A. Valley ("Movant") appeals the motion court's denial of his Rule 29.15 post-conviction relief ("PCR") motion, after an evidentiary hearing.[1]  In three points, Movant contends the motion court clearly erred in denying his claims alleging his trial counsel ("Trial Counsel") was ineffective for failing to (1) investigate and call a certain witness at trial; (2) adduce testimony and records at trial of Movant's physical disabilities; and (3) adduce testimony and records at sentencing of Movant's physical disabilities and mental health issues.  Because Movant's points lack merit, we affirm.

---

[1] All rule references are to Missouri Court Rules (2017).

## Factual and Procedural Background[2]

Movant assaulted his wife ("Wife") many times during their twenty-year marriage, most frequently and severely during their last eighteen months together. One day, in 2016, after the couple had argued for hours, Movant grabbed a 10-gauge shotgun. As Wife tried to escape, Movant told her she was going to die and shot her in the back from seven feet away. She struggled to a neighbor's house and collapsed on the floor.

Movant reloaded his gun, then discarded it and fled. He was apprehended the next day. A jury rejected his claim of accident and found him guilty of first-degree assault and armed criminal action and recommended sentences for those crimes of life and thirty years imprisonment, respectively.

The circuit court convicted Movant of these crimes, imposed the jury's recommended sentences, and ordered that such sentences run consecutively. We affirmed Movant's convictions on direct appeal.

Movant filed a *pro se* PCR motion, and after the appointment of counsel, Movant's counsel timely filed an amended motion. The amended motion set forth six claims for relief, the first, fourth, and fifth of which are relevant on appeal. Those relevant claims, in order, are that Trial Counsel unreasonably failed to "call [M]ovant's son ["Son"] to testify at [M]ovant's trial[,]" "investigate and present testimony and records at trial of [M]ovant's mental health and physical disabilities[,]" and "investigate and present testimony and records at sentencing of [M]ovant's mental health and physical disabilities."

At an evidentiary hearing, the motion court received testimony from Trial Counsel, Son,

---

[2] We borrow freely from our opinion in Movant's direct appeal, **State v. Valley**, 537 S.W.3d 889 (Mo.App. 2018), without further attribution. As with that opinion, the evidence from Movant's trial is summarized in the light most favorable to the verdicts.

a home health care worker ("K.C."), and Movant.  The motion court also received several exhibits, which included the trial transcript, sentencing transcript, and Movant's Social Security records.

Ultimately, the motion court entered findings of facts and conclusions of law denying Movant's requested relief.  Movant timely appeals the motion court's judgment.

## Standard of Review

Our review of the denial of a Rule 29.15 motion for PCR is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous.  Rule 29.15(k); *Watson v. State*, 520 S.W.3d 423, 428 (Mo. banc 2017).  Such "[f]indings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made."  *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000).  The motion court's findings are presumed to be correct.  *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016).

## Discussion

In order to prevail on a claim alleging ineffective assistance of counsel, Movant must overcome a strong presumption of competence and demonstrate, by a preponderance of the evidence, that (1) counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances, and (2) counsel's failure to exercise such skill and diligence prejudiced the movant in some way.  *Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).  In reviewing such claims, we are not required to examine both prongs; if Movant fails to satisfy the performance prong, we need not consider the prejudice prong, and vice versa.  *Strickland*, 466 U.S. at 697; *Sanders*, 738 S.W.2d at 857.

3

To satisfy the performance prong of the **_Strickland_** test, Movant "must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment[,]" which the motion court must find are outside the range of competent assistance. **_Peterson v. State_**, 149 S.W.3d 583, 585 (Mo.App. 2004) (internal quotation marks omitted). In order to demonstrate the requisite prejudice, Movant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **_Strickland_**, 466 U.S. at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." **_Id._**

### Point 1 – The Denial of Claim 1 was not Clearly Erroneous

In his first point, Movant contends the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to investigate and call Son to testify at Movant's trial. Son was not a witness to the shooting but provided testimony at the evidentiary hearing addressing certain interactions (or a lack thereof) between Movant and Wife (and others) prior to and following the shooting.

Our discussion of this point begins and ends with the motion court's finding addressing the **_Strickland_** prejudice prong. In denying Movant's first claim, the motion court found that Movant failed to demonstrate how "[Son]'s testimony regarding the pre-shooting and post-shooting relationship and communications between Movant and [Wife], in light of the totality of the other evidence[,] would have rendered a different result of the trial or that the jury would have had a reasonable doubt respecting Movant's guilt." Movant contends, "[Son]'s testimony would have weakened [Wife]'s credibility, supported the defense theory of an accidental shooting, and led to a not guilty verdict."

As relevant here, "[w]here a post-conviction claim is based on trial counsel's failure to investigate or call a witness at trial, proof of prejudice requires a persuasive connection between

4

the absent testimony and a viable defense." ***Martin v. State***, 526 S.W.3d 169, 194 (Mo.App. 2017). But "[t]hat standard is difficult to meet where omitted testimony is offered solely for purposes of impeachment." ***Id.*** When the testimony of such a witness would have been offered to impeach a State witness, "relief on a claim of ineffective assistance of counsel *is not warranted* unless the testimony of the witness would also negate an element of the crime for which a movant was convicted, thus providing the movant with a viable defense." ***Id.*** (internal quotation marks omitted) (emphasis added). Additionally,

> [t]he use of impeachment evidence regarding a tangential fact to argue an inference that a witness could be lying about a fact salient to a finding of guilt is not the equivalent of a viable defense, and does not suggest a reasonable probability that the result of a trial would have been different.

***Id.***

In his supporting argument, Movant recognizes and attempts to address these hurdles. According to Movant:

> [Son]'s testimony not only impeached [Wife], but it also went to the overall controverted issue of accident vs. intentional. His testimony established that his mother did not remember whether the shooting was intentional. It also established that [Wife] believed the shooting to be an accident, but her family was pressuring her financially to feign memory of intent. Moreover, [Son] would have countered the [S]tate's evidence that [Movant] had been abusive before. Finally, [Son]'s testimony contradicted the [S]tate's evidence that [Movant] heard voices telling him to shoot [Wife], removing support for the inference that [Movant] had planned to shoot his wife in advance.

None of these arguments, however, demonstrate any clear error by the motion court.

We begin with Movant's argument regarding Wife's memory of the shooting. Son testified, "[Wife] always refused to say anything about it and I didn't pressure her to give her side of the story[.]" In response to the follow-up question, asking, "[d]id [Wife] ever tell you she couldn't remember what happened that day[,]" Son replied, "Yes."

5

In her trial testimony, Wife provided some substantive details about the shooting—including that while Movant was holding the gun he told her how worthless she was and that she was going to die—that support a finding that Movant acted intentionally. So, at best, Son's testimony may have called into question Wife's memory as to this issue. But Wife also conceded during her trial testimony, "I don't remember a whole lot about it." In fact, Trial Counsel asked Wife during cross-examination "[s]o would it be fair to say [your] memory is not clear[,]" and Wife responded, "[r]ight." Movant fails to explain how Son's testimony about Wife's memory would not have been cumulative to evidence already adduced at trial.

Additionally, Son's testimony refutes the next part of Movant's argument that such testimony would have "established" Wife "believed the shooting to be an accident, but her family was pressuring her financially to feign memory of intent." Movant does not cite any testimony, nor can we find any such testimony by Son, suggesting that Wife "believed the shooting to be an accident[.]" As already discussed, Son testified that Wife informed him she did not remember the incident.

It is true Son testified that his maternal grandparents owned the house Movant and Wife lived in together and provided Wife with monthly financial support. It is also true Son testified Wife told him that her parents had threatened to take away her house "if she didn't say what they thought was the truth[.]" But on cross-examination, when asked, "[d]id [Wife] ever directly tell you that she was intending to testify untruthfully at trial[,]" Son replied, No." Then, when asked, "[w]hat specific way was [Wife] supposed to testify," Son replied:

> She didn't say specifically but I know that they were pushing really hard for him to go to prison. She didn't say specific details. Basically she was . . . thinking that I was going to be mad at her you know for putting my father away so she was telling me that my grandmother was putting pressure on her to be more harsh if you will in her testimony.

6

Movant fails to explain how such testimony by Son, in which he admits to having no knowledge as to whether any pressure by his maternal grandparents affected Wife's trial testimony, would have risen to the level of a viable defense.

Son's testimony, additionally, would not have "countered" the State's evidence that Movant was abusive. When asked on direct examination, "[d]uring the years that you were associated with your mom and dad would you consider they had a violent relationship[,]" Son replied, "[p]robably 98% of the time no." Son responded to the next question, "[s]o is it a fair statement to say . . . there was at times some physical altercations[,]" by stating, "[t]hey had their arguments yes." As such, this testimony did not foreclose the possibility of abuse by Movant against Wife. Moreover, this issue was arguably tangential to the ultimate issue of whether Movant shot Wife intentionally.

Finally, Son's testimony did not "contradict" the State's evidence that Movant heard voices telling him to shoot Wife. The referenced evidence was that, in October of 2015, Movant told K.C. that "I'm hearing voices and they're telling me to shoot my wife," and "I don't want to shoot her but the voices won't leave me alone." Son, however, merely answered in the negative when asked, "[h]ave you ever heard your father in the entirety of the time that you've known him talk about hearing voices[.]" Movant fails to explain how Son's testimony, which amounts to him not being privy to the same information as K.C., suggests that K.C. was lying or otherwise would have risen to the level of a viable defense.

For all of the foregoing reasons, Movant has failed to demonstrate that the motion court erred in finding Movant was not prejudiced by Trial Counsel's failure to call Son as a witness at trial. Movant's first point is denied.

***Point 2 – The Denial of Claim 4 was not Clearly Erroneous***

In his second point, Movant contends the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to introduce testimony and documentation of Movant's purported physical disabilities during the guilt phase of the trial.[3] The documentation in question consisted of Movant's Social Security records, generally covering a period from 2002 to 2005. As reflected by those records, Movant reported numbness and tingling in his left arm and in the fourth and fifth digits of his left hand; back spasms; back, neck, and shoulder pain; numbness in his left leg; an unsteady gait; lumbar mobility limitations; and stiffness in his left hip.

Again, our discussion of this point begins and ends with the motion court's finding addressing the ***Strickland*** prejudice prong. In denying Movant's fourth claim, the motion court stated it was "not convinced that the presentation of evidence of such physical limitations would have had any persuasive effect in advancing Movant's theory of an accidental discharge." Movant's argument, contending this finding was clearly erroneous, focuses on evidence of the physical disabilities affecting his left arm, left hand, and back. Movant asserts that if he was suffering from "tingling, numbness, or spasms, there is a reasonably [sic] probability that he accidentally discharged the gun while holding it." Movant further asserts that "[b]ecause an accident would have negated the culpable mental state, there is a reasonable probability that the jury would have found [Movant] not guilty."

Movant, however, fails to explain how such evidence would have helped or been

---

[3] Movant's second point only challenges the motion court's findings of fact and conclusions of law addressing the evidence of Movant's purported physical disabilities. In his supporting argument, Movant concedes he is not challenging the motion court's finding that Trial Counsel had a reasonable trial strategy to not offer Movant's mental health records into evidence at trial because such evidence would have contradicted the defense theory of an accidental shooting.

consistent with the accident claim he advanced at trial. Movant's account was that, after a day-long binge of alcohol, marijuana, and methamphetamine, he and Wife were "play[ing] with guns" on the kitchen island. The shooting occurred, according to Movant, after Wife said she needed to get some air and started walking towards the back door. Movant then claimed he headed for the bedroom, grabbed the shotgun by the barrel, placed his left hand on the butt stock, and as he was turning it he "noticed the hammer was cocked." When asked by Trial Counsel, "[w]hat'd you do about that[,]" Movant replied, "I let it down." When asked next, "[w]hat happened[,]" Movant replied, "[i]t went off." This testimony suggests a *deliberative manipulation* of the shotgun—letting the hammer down—giving rise to the claimed accidental discharge. Movant did not state or suggest he was then suffering from "tingling, numbness, or spasms," or that those conditions played any role in the claimed accidental discharge.

We recognize that any testimonial omission of these issues by Movant may ultimately have stemmed from Trial Counsel's failure to so inquire or otherwise introduce evidence regarding such. If so, Movant had the opportunity to say so during his testimony at the evidentiary hearing. Like his testimony offered at trial, Movant again testified that he picked up the shotgun from the kitchen island with his right hand and placed his left hand on the butt stock. This time, however, Movant did not claim he manipulated the hammer in any way with his left hand. Nor did Movant claim that he was experiencing tingling, numbness, or spasms while holding the shotgun. Instead, Movant gave a new account of an altogether different (but deliberative) action resulting in the claimed accidental discharge. Movant testified, "When I turned the gun was in between us, in between me and the counter and it hit the counter and went off."

This record simply provides no support for Movant's contention that the motion court

9

clearly erred in finding there was no prejudice resulting from Trial Counsel's failure to introduce evidence of Movant's purported physical disabilities at trial to support the theory of an accidental discharge. Movant's second point is denied.

### *Point 3 – The Denial of Claim 5 was not Clearly Erroneous*

In his third and final point, Movant contends the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to introduce testimony and documentation of Movant's purported physical disabilities and mental health issues during the penalty phase of the trial. We disagree.

Movant's mere identification of an omission by Trial Counsel at sentencing is insufficient to support his claim. Movant was required to "overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). Movant was also required to show that "but for counsel's alleged deficient performance during sentencing, there is a reasonable probability he would have received a lesser sentence." *Roberts v. State*, 535 S.W.3d 789, 801 (Mo.App. 2017).

In denying Movant's fifth claim, however, the motion court found that "Movant failed to present *any* evidence related to this specific claim." (Emphasis added.) Movant responds that "[p]ost[-]conviction counsel asked [T]rial [C]ounsel twice about presenting medical evidence at sentencing." Movant then concedes, however, that "Trial [C]ounsel could hardly think of an answer regarding the guilt phase, and *he never answered as to why he failed to adduce the evidence at sentencing*." (Emphasis added.)

The onus was on Movant, not Trial Counsel, to elicit and put forward the required evidentiary support for the claim. Movant failed to do so. Movant's argument, therefore, contains nothing but speculation and conjecture addressing the reason for the records omission

10

and the effect such omission had on Movant's sentence. "Mere conjecture or speculation is *not* sufficient to satisfy [*Strickland*]. *Harding v. State*, 613 S.W.3d 522, 531 (Mo.App. 2020).

Absent any evidence supporting Movant's claim that Trial Counsel was ineffective in failing to offer medical records during the penalty phase of trial, the motion court did not clearly err in denying it. Movant's third point is denied.

## Decision

The motion court's denial of post-conviction relief is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS